IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | |
|---|---|
| BARRY BROCK, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| v. | **JURY TRIAL DEMANDED** |
| BEHR PROCESS CORP.; BEHR PAINT CORP.; MASCO CORP.; THE HOME DEPOT, INC.; and HOME DEPOT U.S.A., INC., | |

Michael Weinkowitz
Charles E. Schaffer
LEVIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106-3697
Telephone: (877) 882-1011
Facsimile: (215) 592-4663
mweinkowitz@lfsblaw.com
cschaffer@lfsblaw.com

Michael McShane
S. Clinton Woods
Ling Y. Kuang
AUDET & PARTNERS, LLP
711 Van Ness Avenue. Suite 500
San Francisco, CA 94102
Telephone: (415) 568-2555
Facsimile: (415) 568-2556
mmcshane@audetlaw.com
cwoods@audetlaw.com
lkuang@audetlaw.com

Charles LaDuca
CUNEO GILBERT & LADUCA LLP
4725 Wisconsin Avenue, NW
Suite 200
Washington, DC 20016
Telephone: (202)789-3960
Facsimile: (202) 789-1813
charles@cuneolaw.com

Melissa S. Weiner
HALUNEN LAW
80 South 8th Street
IDS Center
Suite 1650
Minneapolis, MN 55402
Telephone: (612) 548-5286
Facsimile: (612) 605-4099
weiner@halunenlaw.com

*Attorneys for Plaintiff BARRY BROCK*

## LOCAL CIVIL RULE 10.1 STATEMENT

The mailing addresses of the parties to this action are:

Plaintiff BARRY BROCK
10 Allen Drive
Kinnelon, New Jersey  07405

Behr Process Corporation
3400 W. Segerstrom Avenue
Santa Ana, California, 92704

Behr Paint Corporation
3400 W. Segerstrom Avenue
Santa Ana, California, 92704

Masco Corporation
20001 Van Born Road
Taylor, Michigan, 48180

The Home Depot, Inc.
2455 Paces Ferry Road
Atlanta, Georgia 30339

Home Depot U.S.A., Inc.
2455 Paces Ferry Road
Atlanta, Georgia 30339

## NATURE OF CASE

Plaintiff BARRY BROCK, individually and on behalf of all others similarly situated, by and through undersigned counsel, allege as follows.

1.      Millions of Americans have wooden decks and concrete surfaces outside their homes. The surfaces require periodic maintenance not only to maximize their useful life, but also to keep up their appearance. Traditionally, homeowners apply paints or stains on their decks and patios to provide a decorative and protective barrier from the elements and to minimize wear and tear.

2.      In 2013, Behr, through a national marketing campaign, released a new patio and deck product exclusively through Home Depot, branded as DeckOver. Behr and Home Depot represented to homeowners that DeckOver was worth its premium price (3-5 times more expensive than ordinary paints and stains) because it was a more durable coating (5 times thicker) and it could repair decks by filling in cracks and stopping splinters.

3.      But DeckOver is not durable or long-lasting. Instead, within mere months of application, DeckOver begins to flake, peel, and separate from deck and concrete surfaces. Thus, rather than providing homeowners with a premium option for reducing maintenance work and improving the look and performance of their patios and decks, DeckOver performs worse than cheaper options and requires hours of scraping, scrubbing, and sanding to remove it (with some homeowners resorting to replacing their decks entirely).

4.      Plaintiff bring this class action suit on his own behalf and on behalf of others similarly situated under New Jersey consumer protection statutes and the laws of New Jersey. Plaintiff seek an order forcing Behr and Home Depot to stop their deceptive conduct and to provide appropriate remuneration to affected consumers.

## **JURISDICTION AND VENUE**

5.      This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332 (a) and (d), because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and more than two-thirds of the members of the proposed Class are citizens of states different from that of the Defendants Masco Corporation, The Home Depot, Inc., and Home Depot U.S.A., Inc.

6.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants' improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district, and because plaintiff is resident of this District.

## PARTIES

7.     Plaintiff Barry Brock is a resident of Morris County, and a citizen of the State of New Jersey

8.     Defendants Behr Process Corporation and Behr Paint Corporation are California corporations, with their principal place of business in California. Both Behr Process Corporation and Behr Paint Corporation are located at 3400 W. Segerstrom Ave., Santa Ana, California, 92704.

9.     Defendant Masco Corporation is a Delaware corporation, with its principal place of business in Michigan. Masco is located at 20001 Van Born Road, Taylor, Michigan, 48180. Masco acquired Behr Process Corporation in 1999. Masco conducts Behr-oriented marketing and sales operations in Santa Ana, California. Plaintiff refers to Behr Process Corporation, Behr Paint Corporation, and Masco Corporation collectively as "Behr."

10.     Defendant The Home Depot, Inc. is a Delaware corporation, with its principal place of business in Georgia. The Home Depot, Inc. is the parent company of Home Depot U.S.A., Inc. and describes itself in annual reports filed with the Securities Exchange Commission as the world's largest home improvement retailer.

11.     Defendant Home Depot U.S.A., Inc. is a Delaware corporation, with its principal place of business in Georgia. Home Depot U.S.A. operates as a subsidiary of The Home Depot, Inc.  Plaintiff refers to The Home Depot, Inc. and Home Depot U.S.A., Inc. as "Home Depot".

## COMMON FACTUAL ALLEGATIONS

### I.    Deck and Patio Restoration

12.    Wooden decks and concrete surfaces are prone to wear and deterioration through exposure to the elements, which leads to scuffing, decay, cracking, and splinters. Periodic maintenance is needed to maximize the surfaces' useful life and to keep up their appearance.

13.    One way to maintain the surfaces is through application of coatings. Coatings include paints and stains that provide a thin decorative and protective barrier (with the stains actually soaking into the fibers themselves). Although paints and stains provide some surface protection, they typically do not improve the surfaces' condition (for example, by fixing cracks or splinters). Paints also need to be reapplied relatively often to maintain their cosmetic and protective benefits.

14.    An alternative coating, which is the focus of this case, is a relatively recent introduction to the marketplace: a protective, restorative coating, known as a resurfacer. Resurfacers are also painted onto surfaces and are typically marketed as providing substantially more benefits (at a greater cost) than paints and stains. Resurfacers are supposed to provide an attractive appearance akin to what a paint or stain would provide, but better preserve the surface by coating it in a significantly thicker protective barrier. The thicker coating provides the added benefit of filling in large cracks and encapsulating splinters. Resurfacers are designed and expected to last significantly longer than paints and stains, eliminating the need for regular maintenance while at the same time substantially extending the life of wood and concrete surfaces.

15.    Because of their expected added benefits, resurfacers typically cost substantially more than paints and stains. A consumer who spends the extra money to buy a resurfacer may be

able to avoid replacing a deck or will have to devote less time and money to maintaining the deck in the years that follow.

## II.    Behr DeckOver

16.      Behr manufactures a line of deck resurfacers: "Behr's Premium DeckOver." Behr officially introduced its Premium DeckOver product in the spring of 2013, claiming in a press release that DeckOver was an "advanced formula" that "revitalize[s] tired decks, patios, porches and even pool decks, and provides a budget-friendly unique solution that was previously unavailable to consumers." According to Scott Richards, Senior Vice President of Marketing at Behr Process Corporation, this product line was the culmination of "years of research and the latest technology."

17.      Richards described "easy application and durable protection against the elements, . . . allowing consumers to rejuvenate instead of replacing their decks or concrete surfaces." About a year later, Behr introduced a Textured DeckOver product. DeckOver is sold exclusively at Home Depot, both online and at retail locations.

## III.    Defendants' Marketing Campaign

18.      Since DeckOver was introduced, both Behr and Home Depot have marketed it as a durable and long-lasting alternative to paint and stains, capable of extending the life of surfaces.

19.      For example, Behr's website claims DeckOver creates a "[l]ong-lasting, durable finish" that "conceals cracks and splinters up to ¼"" and creates a smooth, slip-resistant finish that also resists cracking and peeling" with "excellent adhesion." It also describes DeckOver as "5x thicker than standard paints and stains."

20.     Similar representations appear on the product's packaging:



The label states that DeckOver "Brings new life to old wood & concrete";
"Covers up to 75 Sq. Ft. in 2 Coats"; "Creates a Smooth, Slip-Resistant Finish";
and Conceals Splinters & Cracks up to ¼"."



The label also represents:

• "Resists Cracking & Peeling";

• "Durable, Mildew Resistant Finish";

• "Waterproofing, Solid Color Coating";

• "Revives Wood & Composite Decks, Railings, Porches & Boat Docks";

• Great for Concrete Pool Decks, Patios & Sidewalks"; and

• "Interior/Exterior, 100% Acrylic Formula."

21.     Behr also airs television commercials advertising DeckOver. The DeckOver television commercials emphasize the same themes as can be found on DeckOver labeling and in-store displays: the ads feature people standing and dancing barefoot on decks, with a voiceover saying not to "let cracks and splinters spoil your fun" and promising DeckOver is "made-to-last," "extends the life of your deck," and is the "ultimate do-over for wood and concrete."

22.     Behr hosts a blog entitled "Colorfully Behr" at www.behr.com/colorfullybehr. A blog entry dated May 31, 2013, markets DeckOver: "excellent news if you have a wood deck that looks old and weathered, or a pool deck that's cracked and ugly, because you don't have to replace it anymore." In the comments portion on this DeckOver entry, Behr describes the "life expectancy" of DeckOver as "similar to a high quality solid color wood stain (typically 5-10 years on horizontal surfaces, 15-25 years on vertical surfaces)." Behr also states on Home Depot's website that DeckOver "can be expected to last as long as a high quality Solid Color Wood Stain," which is "5-10 years on horizontal surfaces and 15-25 years on vertical surfaces."

23.     Home Depot markets DeckOver in a virtually identical manner as Behr. On its website, Home Depot emphasizes the durability and restorative effects of DeckOver, claiming it "will bring your old, weathered wood or concrete back to life," that it will "create[s] a durable coating on your tired deck, rejuvenating its look," and that it will "[b]ring new life to old, uninviting wood" and make your surfaces "like new," with a "refreshed look." Home Depot, like Behr, emphasizes that DeckOver "[r]esists cracking and peeling," "conceals splinters and cracks up to ¼ in," and is "waterproof[]," "providing a "mildew resistant finish." In-store displays at Home Depot tout DeckOver's "long-lasting durability."

24.     Behr and Home Depot use these representations to charge more for DeckOver. Behr's overall marketing scheme focuses on DeckOver's superior durability compared to paints

and stains and that it is an alternative to deck replacement (which is several times more expensive). DeckOver, compared to Behr and other companies' paints and stains, covers 3-5 times less area and yet is more expensive per gallon.

| Type | Behr Product | Coverage per gallon | Cost per gallon |
|------|--------------|---------------------|-----------------|
| Resurfacer | DeckOver | "75 sq. ft. in two coats" | $35 |
| Stain | DeckPlus Waterproofing Wood Stain | 250-300 sq. ft. first coat 500-600 sq. ft. second coat | $27 |
| Paint | Porch & Patio Floor Paint | 400 sq. ft. | $28 |

**IV.    As Defendants Know, DeckOver Is Not a Durable Alternative to Paints, Stains, and Other Resurfacers**

25.    DeckOver is not capable of reliably coating wood and concrete surfaces for more than a short period of time. It routinely peels, bubbles, and degrades within months of application.

26.    Behr's website has received over 150 consumer complaints since summer 2013 concerning DeckOver's short-lived utility, the damage it causes to the surfaces to which it is applied, and the time and money spent to either rehabilitate or replace decks to which DeckOver was applied. In addition to on-line consumer complaints, Defendants have received countless formal warranty claims and complaints.    Several examples of the on-line complaints are excerpted below:

- "I was extremely happy to hear the supposed benefits and ease of use of this new product. … The problem is that upon putting our furniture back on the deck, any slight movement scratches the finish back down to the bare wood. We hosted a party this weekend for 30 people and I now have 10 or so areas to touch up. With the cost and time spent dealing with this product, I expect years of normal wear and tear, not one week. We are disappointed and would recommend going a different route."—June 29, 2013

- "When it dried the deck looked like plastic rather than wood. And then when we placed the outdoor furniture back on the deck we found that the

slightest movement of the chairs mars the deck finish. When the dog runs across the deck her wet/muddy paws mark the deck. The DeckOver finish is too delicate for a deck. We are very disappointed with the product, with Behr and with Home Depot."—August 8, 2013

- "Don't waste your money on this product if you have an older deck with cracks. The coverage is not want [*sic*] the product advertised and the paint chips and scratches very easily. The product is way overpriced. You would come out a lot better just to replace the decking boards."—September 9, 2013

- "Worst product ever! Waste of money! . . . I bought the Behr DeckOver product in order to redo my deck. I did all the prep work the instructions stated to do . . . I did all of this in the summer of 2013. It is now February 2014. The product did not even last one year. The product is already peeling up off of the wood . . . I would have been better to re stain the deck rather than use this product. I will have to now re-sand all of this off and apply a coat of deck stain to protect the wood."—February 27, 2014

- "Peeling off after 8 months . . . I painted my deck in summer 2013, followed all instructions from the can. Just after 8 months my deck started to peel off. Now I have to spend money getting all my deck sanded to be able to get all this deck over removed.—March 10, 2014.

(Image from above review dated March 10, 2014)



- Peeled Badly . . . When I applied the DeckOver product, last summer, it looked beautiful. But now that winter has ended it's peeling and looks horrible. I've only had it down for 9 months and now I'm going to have to completely redo my deck. What an absolute mess!"—April 18, 2015

- "Peeling . . . Did not last one year and very difficult to work with. You need to offer total refunds at the very least. There is no way to return the

11

time spent working with this garbage and no way to put a price on the stress caused when the peeling began after the snow melted."—May 10, 2015

- "I was so excited to try DeckOver on my deck. The pictures made it look like an amazing product. I prepped and sanded the deck using Behr products as I wanted to make sure I applied everything correctly. After the snow melted this year over 50% of my deckover peeled right off. I am sad to say that splurging for the more expensive 'better' product certainly did not pay off for me. Product states it will last on a deck for up to 10 years yet it hasn't even lasted a full year on my deck. I am very disappointed in Behr and their DeckOver product"—May 12, 2015

- In less than a year of putting this DeckOver on our deck, I started to see some bubbling starting along the trim boards of the deck. Not much longer and the whole deck showed signs of the bubbling and then complete peeling . . . This was intended as a hot tub deck but now it sits empty as we cannot afford to buy any other stain/paint. Plus take the time to peel all the defective Behr DeckOver paint and put another cleaner on the deck."—October 27, 2016

- "Followed all the instructions . . . Started peeling after about 60 days to a point where large chunks were blowing off. Now comes the hard part of using sandpaper, sanding discs, chemicals, power washer, scrapers and anything else I can think of to remove what's left. Behr owes me 48 hours of my life back. Thank goodness I didn't do the railings and spindles!!!!!"—April 3, 2017

- "This is the worst product I have ever purchased. Advertised to bring back old wood to life, it ruined what old wood I had and caused me to replace my entire deck! Would NEVER recommend this product to anyone."—May 9, 2017

27.    The negative reviews on Behr's website are not prominently featured, particularly when compared to positive reviews. For example, when visiting the page for Behr Premium DeckOver, Behr prominently lists the "Latest Featured Reviews" toward the top of the page in large font. Each of those reviews is positive in nature and is highlighted in large gold print. To locate the many negative reviews, on the other hand, it is necessary to either click to a separate webpage entirely, or to scroll toward the bottom of the page to an area that is not visible on most computer monitors and devices without scrolling down the webpage. Once near the bottom of

the page, it is possible to toggle from a "Product Usage" tab, which appears by default, to the "Ratings & Reviews" tab. Only after that toggle is it possible to see the negative reviews. An "Avg. Rating" appears toward the top of the page, but it is in smaller print than the featured reviews and is in black text, rather than the gold text of the featured reviews. Also of note, while Behr's website allows reviews of 1-, 2-, 3-, 4-, and 5-stars, the posted reviews do not show anything approaching a bell curve distribution. Instead, there are fewer 2-, 3-, and 4-star reviews combined than there are either 1- or 5-star reviews. One explanation for this would be that Behr or a surrogate has "stuffed the ballot box," by placing positive reviews to balance out the hundreds of negative reviews. This is a fairly common practice for websites that post customer reviews.

28.    Home Depot has also received hundreds of DeckOver complaints through its website:

- "Doing my deck over . . . Don't buy this product. I hope it holds up during the winter. Otherwise I'll be doing my deck over in the spring. It definitely will not be Behr's DeckOver or anything by Behr for that matter."-August 3, 2013

- "Peeling after 6 mos . . . I followed all of the directions & replaced all rotted deck boards. DeckOver is peeling & bubbling all over my deck! A disaster"-May 14, 2014

- "Did not last a year . . . Labor intensive to install. did not hold up over northern Illinois winter. i would pass."-May 24, 2014

- "the worst stuff on the market, didn't last 3months and when I want my money back this paint is GARBAGE."-July 3, 2014

- "We used this product on an older deck, after buying our home. Spent tons of money and time on this project with DeckOver last fall, in September. It's only May, and the whole area is peeling off. Needs totally redone again, and it hasn't even been a year."-May 14, 2014

- "Worst product I have ever bought. We used over 6 gallons for our large deck. The sales person told us it would last 10 years. We followed the

instructions exactly and within SIX months it was peeling! Not to mention it does not fill in cracks like promised."-June 3, 2015

- "We feel the product was misrepresented by Home Depot and Behr and therefore did not meet our expectations. It did not do a good job of covering the concrete surface of our lanai."-March 5, 2017

- "I should've read the reviews before using this product. We actually paid a professional to apply it to our deck. They followed all of the instructions and it looked great for about a month and then we had a few late spring snow storms not it is peeling right off the wood. It is starting to look terrible. What a waste of money!"-May 17, 2017

- "This paint is terrible!!! Did every step Bahr [sic] called for last summer 2016 to prep deck and paint with deck over. It is now April or 2017 and my deck is peeling badly. You can take the paint and peel it up like tape. Absolutely horrible. Spent 500.000 (sic) dollars and one week to paint deck and railings."-April 9, 2017.

- Within 7 months this product will peal (sic) up. I have no idea why this product is still on the market. You will be scraping it off in a year. Don't waste your time or money on it."-June 6, 2016

- "Mine is bubbling up after ONE month. Applied exactly as specified. Horrible product."-October 1, 2016

- "HORRIBLE PRODUCT. I would never recommend this!!!!! . . . We spent so much money and time using a product that turned out to be an utter disaster. Home depot should have tested this product thoroughly . . . very laborious, not long lasting, deck looks worse since using product, does not hold up to normal weather conditions, high price for sub-par product."-May 1, 2014

- "This product is just awful, less than a year after application and my deck is peeling and the flakes of paint are literally covering my lawn and being tracked into the house. We followed all the manufacturer instructions on preparing the wood for this product but all that money and time we spent using this product was a waste. The worst part is now I have to try to fix it. Please, please save yourself and do not try this product!"-May 17, 2016

- "We purchased 3 cans and all the supplies needed. Followed the instructions to a tea. Looked great for a very short few months and peeled and chipped and now looks worse than it did before all my time, work, and money!! So. Mad!!"-May 15, 2015

- "after 6 months this is peeling . . . We are seniors that live on SS and bought this product for our deck. It was very expensive, but it was highly

recommended and we used it as the directions recommended. We had a lot of snow and cold weather this year, but we thought this was the purpose of this product. We would never recommend this product."- March 20, 2015

29.     Like on the Behr website, the negative customer reviews of DeckOver on the Home Depot website are not prominent. On the Behr Premium DeckOver page, for example, the reviews do not appear until the lower half of the page, which requires scrolling down well past what would be visible on the typical computer monitor or device. In addition, the reviews on Home Depot's website, like on Behr's, do not follow a bell curve distribution and instead are mostly 1- and 5-star reviews.

30.     It is common for manufacturers and sellers of consumer products to monitor media reports, internet forums, and other public reactions and treatment of their product. In May 2016, CBC News published an article entitled: "Behr DeckOver subject of customer complaints over peeling paint; Company removed Facebook page with numerous complaints after CBC inquiry." The article describes, among others, homeowner Paul Rhyno, who first used DeckOver in 2014.



But "[w]ithin about three months after [Mr. Rhyno] put it on, it started peeling off in big swaths and bubbling." He tried again the following year but got the same results. The article contains photographs of Mr. Rhyno's damaged deck:

31.    Negative consumer reactions to Behr's DeckOver can also be found elsewhere across the internet. For example, about 100 customers have written complaints about DeckOver on pissedcustomer.com, including the following:

- I applied DeckOver last fall and now it is all peeling off and my deck looks worse than when I first did it. I am very disappointed in this product. I spent well over a hundred dollars on this product . . . I thought it was guaranteed to last up to 10 years."—May 15, 2015

- "I spent a great deal of money painting two decks with this garbage. One year later it is peeling off everywhere . . . I now am having to replace several rotted boards, pay for pressure washing again and when cured, repainted. It will obviously cost me more to fix the problem than when I initially paid to have the deck painted, as I am sure a lot of scraping will also have to be done."—October 19, 2016

- • "I had this product put on my deck last fall and it began to peel by spring. Now I have multiple places that the DeckOver has completely peeled off . . . It's a shame you pay hat [sic] much for a product that does not last one year."—December 30, 2016

32.    Behr also researched and tested DeckOver before beginning to sell it. Given how quickly it becomes apparent that DeckOver is not capable of performing as a durable alternative coating on wood and concrete surfaces, Behr certainly discovered that DeckOver begins to peel, chip, bubble, and crack within months of application before introducing DeckOver to the market

33.    After it went on the market, complaints were widespread and persistent: Defendants have received phone calls and emails complaining about DeckOver, and consumers have been uploading negative reviews of DeckOver on Behr's own website, Home Depot's own website, and elsewhere since summer 2013. Behr reviews the complaints on these websites and has responded to some of them. The complaints on these websites are not prominent. For example,

Behr highlights on its DeckOver product page the "Latest Featured Reviews" which consists of four and five star reviews, but only through scrolling well down the page or clicking to a separate webpage is it revealed that there are hundreds of negative reviews. Likewise the reviews on Defendants websites do not follow a bell curve distribution and instead are mostly 1- and 5-star reviews. In addition, there is at least one report by the media that Behr removed online complaints on its own Facebook page containing DeckOver complaints.

34.    Fixing the damage to one's deck that results from applying DeckOver is difficult and costly. As the reviews above describe, DeckOver cracks, peels, bubbles, and chips, exposing the underlying surface to the elements. All these forms of exposure both fail to protect wood from precipitation and trap water onto wooden boards underneath the DeckOver that remains, causing mildew and rot. Repairing loose areas in patches does not solve these problems as other areas of DeckOver will inevitably loosen. Full removal of DeckOver requires stripping the deck and reapplying a protective coating, which takes hours. Given how costly it is to remove DeckOver, re-prepare the surface, and re-coat it, some deck owners resort to replacing their decks entirely.

35.    Ignoring its deficiencies and the large amount of claims and complaints it has received, Defendants continue to sell DeckOver, continue to market it as "durable," "long-lasting," and an alternative to replacing one's deck, and do not warn customers beforehand that the product fails after only a few months, often leaving the surface looking worse than before DeckOver was applied.

36.    As a result, consumers continue to spend hundreds of dollars purchasing and applying DeckOver, and spend time and money removing and replacing DeckOver when it peels, bubbles, chips, cracks, discolors, and damages their decks.

## PLAINTIFF'S EXPERIENCE:

37.     In April of 2014, Plaintiff Barry Brock purchased several 6-8 gallons of Behr DeckOver paint product from a Home Depot store in New Jersey. Pre-purchase, Mr. Brock had a conversation with a Home Depot representative and reviewed an in-store display that contained advertisements which represented that the product as the best thing in forever to paint decks. While reviewing the DeckOver, Mr. Brock paid particular attention to comparisons between Behr DeckOver and a similar Rust-Oleum product. In addition, Mr. Brock reviewed the representations on the can of the DeckOver. Mr. Brock chose the Behr DeckOver in part because the rep stated that DeckOver was a new, different and clearly better product. Mr. Brock also relied on the representations in the advertisement and the can in deciding to purchase DeckOver.

38.     Mr. Brock applied the DeckOver to his deck, including a deck, in the Summer of 2014. He carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed, including the use of a belt sander on surfaces prior to installation. In approximately the Spring of 2016 the DeckOver began to bubble and pull off the wood surfaces, and cracks appeared in the coating. Soon after, the DeckOver was peeling off in large strips, completely exposing the wood underneath.

39.     Had Mr. Brock known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product.

40.     Mr. Brock continues to own a home with wooden surfaces outside and reasonably intends to continue to maintain those surfaces in the years to come, including by purchasing resurfacers or other coatings. He is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, that he and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

## CLASS ACTION ALLEGATIONS

41.    This action is brought and may be maintained under Fed. R. Civ. P. 23 as a class action.

42.    Plaintiff seek to represent the following Class:

New Jersey Class by Plaintiff Barry Brock and all those similarly

situated: All persons who purchased a Behr Premium DeckOver

product in the state of New Jersey.

43.    Excluded from all Classes are: (1) Defendants, and any entity in which Defendants have a controlling interest or which have a controlling interest in Defendant; (2) Defendant's legal representatives, assigns and successors; (3) the judge(s) to whom this case is assigned, his or her spouse, and members of the judge's staff; and (4) anyone who purchased DeckOver for resale.

44.    Plaintiff and Class members seek relief under Rule 23(b)(2). The injunctive relief Plaintiff and Class members seek is a significant reason for bringing this case and, on its own, justifies the prosecution of this litigation. Plaintiff and Class members also seek relief under Rule (b)(3) and/or (c)(4).

45.    **Numerosity**: Behr has manufactured, and Home Depot has sold, DeckOver to at least thousands of proposed Class members. Members of the proposed Classes are thus too numerous to practically join in a single action. Class members may be notified of the pendency of this action by mail, supplemented by published notice (if deemed necessary or appropriate by the Court).

46.    **Commonality and Predominance**: Common question of law and fact exist as to all proposed Class members and predominate over questions affecting only individual Class members. These common questions include whether:

a.    Defendants marketed DeckOver as a durable resurfacer capable of providing long-lasting protection for wood and concrete surfaces;

b.    DeckOver is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, but is instead prone to promptly peeling, chipping, bubbling, and degrading within months of application;

c.    Defendants' marketing of DeckOver was false, deceptive, and misleading to reasonable consumers;

d.    Defendants knew DeckOver was not a durable resurfacer capable of providing long-lasting protection for wood and concrete surfaces and is instead susceptible to peeling, chipping, bubbling, and degrading within months of application;

e.    DeckOver's propensity to peel, chip, bubble, and generally degrade within months of application, rather than provide long-lasting protection for wood and concrete surfaces, would be important to a reasonable consumer;

f.    Defendants failed to disclose DeckOver's propensity for peeling, chipping, bubbling, and degrading within months of application; and

g.    Whether Defendants' conduct violates New Jersey consumer protection statute and other laws of New Jersey.

47.    **Typicality**: Plaintiff's claims are typical of the claims of the proposed Class. Plaintiff and the members of the proposed Class all purchased DeckOver, giving rise to substantially the same claims.

48.    **Adequacy**: Plaintiff is an adequate representation of the proposed Classes because their interests do not conflict with the interests of the members of the Classes that they seek to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and will prosecute this action vigorously on Class members' behalf.

49.    **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible. Even if Class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from this issue, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

50.    In the alternative, the proposed Classes may be certified because:

    a.    The prosecution of separate actions by the individual members of the proposed Class would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendants

      b.     The prosecution of individual actions could result in adjudications, which, as a practical matter, would be dispositive of the interests of non-party Class members or which would substantially impair their ability to protect their interests; and

      c.     Defendants have acted or refused to act on grounds generally applicable to the proposed Classes, thereby making appropriate final and injunctive relief with respect to the members of the proposed Classes as a whole.

## **TOLLING OF STATUTES OF LIMITATIONS**

51.     <u>Discovery Rule:</u> Plaintiff and Class members' claims accrued upon discovery that DeckOver is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, but is instead prone to promptly peeling, chipping, bubbling, and degrading within months of application. While Defendants knew, and concealed, these facts, Plaintiff and Class members could not and did not discover these facts through reasonable diligent investigation until after they experienced the aftermath of DeckOver application and learned that the problem was not isolated to their DeckOver.

52.     <u>Active Concealment Tolling:</u> Any statutes of limitations are tolled by Defendants' knowing and active concealment of the facts set forth above. Defendants kept Plaintiff and all Class members ignorant of vital information essential to the pursuit of their claim, without any fault or lack of diligence on the part of Plaintiff. The details of Defendants' efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and Class members, and await discovery. Plaintiff could not have reasonably discovered these facts, nor that Defendants failed to disclose material facts concerning its performance.

53.    <u>Estoppel</u>: Defendants were and are under a continuous duty to disclose to Plaintiff and all Class members the true character, quality, and nature of DeckOver. At all relevant times, and continuing to this day, Defendants knowingly, affirmatively, and actively concealed the true character, quality, and nature of DeckOver. The details of Defendants' efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and Class members, and await discovery. Plaintiff reasonably relied on Defendants' active concealment. Based on the foregoing, Defendants are estopped from relying on any statutes of limitation in defense of this action.

54.    <u>Equitable Tolling</u>: Defendants took active steps to conceal and misrepresent material facts relating to DeckOver's performance. The details of Defendants' efforts are in its possession, custody, and control, to the exclusion of Plaintiff and Class members, and await discovery. When Plaintiff learned about this material information, he exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing their claims. Should such tolling be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

**<u>COUNT I</u>**

**New Jersey Consumer Fraud Act**

**N.J. Stat. Ann. § 56:8-1, *et seq.***

**(On Behalf of New Jersey Class Against the Behr And Home Depot Defendants)**

55.    Plaintiffs re-allege the paragraphs above as if set forth fully herein.

56.    Plaintiffs and Class members are "persons" as defined by N.J.S.A. §56:8-1.

57.    The products that Plaintiff and each other member of the Class purchased from Defendants are "merchandise" within the meaning of N.J.S.A. § 56:8-1(c).

58.    The New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq., prohibits the "use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation…in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J.S.A 56:8-2.

59.    Home Depot is Behr's exclusive distributor of DeckOver, thereby creating a marketing partnership.

60.    The NJCFA further provides that "[a]ny person who suffers an ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person any method, act, or practice declared unlawful under the [NJCFA] may bring an action or assert a counterclaim therefore in any court of competent jurisdiction. N.J.S.A. 56:9-1.

61.    The Defendants have engaged in, and continues to engage in, unconscionable commercial practices, deceptive acts and misrepresentations in the conduct of its trade and/or commerce in the State of New Jersey. The Behr Defendants manufactured and distributed DeckOver and authorized and marketed its sale to the public even though DeckOver is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, but is instead prone to promptly peeling, chipping, bubbling, and degrading within months of application. Likewise, the Home Depot defendants marketed DeckOver as long-lasting and durable, even though it knew DeckOver is not a durable resurfacer and is not capable of providing the long-lasting protection for wood and concrete surfaces, but is instead, prone to promptly peeling, chipping, bubbling and degrading within months of application.    The Defendants failed to disclose material facts concerning DeckOver's performance at the point of sale and otherwise.

62.    The Defendants made numerous material misrepresentations in its print and in-store advertising. The Defendants knew that DeckOver is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces.

63.    The Defendants failed to disclose to Plaintiffs and Class members and/or actively concealed from them that durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, but is instead prone to promptly peeling, chipping, bubbling, and degrading within months of application, amounting to deceptive conduct under the New Jersey Consumer Fraud Act.

64.    Plaintiff and the and the proposed Class members have a private right of action against Defendants that entitles them to recover, in addition to their actual damages, a threefold award of the damages sustained by any person, interest, as well as an award of reasonable attorney's fees, filing fees and reasonable costs of the suit. N.J.S.A 56:8-19.

65.    Plaintiff and the and the proposed Class members relied upon the fraudulent statements in the marketing materials to their detriment and have suffered and will continue to suffer irreparable harm if Defendants continue to engage in such deceptive, unfair, and unreasonable practices.

66.    The Defendants actions and/or omissions caused and/or will cause Plaintiffs and Class members to be damaged.

67.    The Defendants actions and/or omissions caused and/or will cause Plaintiffs and Class members to be damaged.

68.    The Defendants intended that purchasers rely on its misrepresentations and omissions concerning the quality and characteristics of the DeckOver in purchasing the product.

69.    In making misrepresentations of fact and/or material omissions about the DeckOver product to prospective customers while knowing such representations to be false, the Defendants misrepresented and/or knowingly and intentionally concealed material facts and breached its duty not to do so.

70.    Plaintiffs, Class members, contractors, subcontractors and members of the public were deceived by and relied on Defendants' affirmative misrepresentations and failures to disclose, including, but not limited to, representations about the product's quality and warranty benefits.

71.     There was a causal nexus between Defendants' deceptive and unconscionable commercial practices and Plaintiffs and Class members being damaged as alleged herein, and therefore, Plaintiffs and Class members are entitled to recover actual, statutory and/or trebled damages to the extent permitted by law in an amount to be proven at trial.

72.     Plaintiff Barry Brock, on behalf of himself and the proposed Class members, demands judgment against Defendants for compensatory damages, treble damages, pre- and post-judgment interest, attorneys' fees, injunctive and declaratory relief, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

## COUNT II

### Unjust Enrichment

### Based on New Jersey Common Law

### (On Behalf of New Jersey Class Against the Behr and Home Depot Defendants)

73.     Plaintiff re-allege the paragraphs above as if fully set forth herein.

74.     Plaintiff brings this claim in the alternative.

75.     As described above, the Behr Defendants marketed, distributed, and sold DeckOver as a long-lasting, durable deck resurfacer without disclosing that in reality, the coating begins to strip and peel off soon after application.

76.     As described above, the Home Depot Defendants marketed, distributed, and sold DeckOver as a long-lasting, durable deck resurfacer without disclosing that in reality, the coating begins to strip and peel off soon after application.

77.     As a result of its fraudulent acts and omissions related to DeckOver, Behr and Home Depot obtained monies which rightfully belong to Plaintiff and the proposed Class members to the detriment of Plaintiff and the proposed Class members.

78.     Behr and Home Depot appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and the proposed Class members, who, without knowledge that

the DeckOver would not perform as advertised, paid a higher price for the product than it was worth. Behr and Home Depot also received monies for DeckOver that Plaintiff and the proposed Class members would not have otherwise purchased.

79.    It would be inequitable and unjust for Behr and Home Depot to retain these wrongfully obtained profits.

80.    Behr's and Home Depot's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

81.    As a direct and proximate result of  the Behr and Home Depot Defendants ' wrongful conduct and unjust enrichment, Plaintiff and the Class are entitled to an accounting, restitution from and institution of a constructive trust disgorging all profits, benefits and other compensation obtained the Behr and Home Depot Defendants, plus attorneys' fees, costs and interest thereon.

## COUNT III

### Breach of Express Warranty

### (On Behalf New Jersey Class Against the Behr and Home Depot Defendants)

82.    Plaintiff incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated herein.

83.    The Defendants sold the Product in their regular course of business.  Plaintiff and Class members purchased the DeckOver product

84.    The Defendants marketed and sold the DeckOver into the stream of commerce with the intent that the DeckOver product would be purchased by contractors, subcontractors and end-users for installation on decks and other structures owned and purchased by Plaintiff and the Class.

85.    The Defendants created express warranties for the DeckOver product through its labeling, sales brochures, catalogs, website, and marketing materials. These warranties have full

force and effect. These warranties based upon those statements and representations include *inter alia* that : DeckOver was "[l]ong-lasting, durable finish," "conceals cracks and splinters up to ¼"" and creates a smooth, slip-resistant finish that also resists cracking and peeling" with "excellent adhesion." , "Resists Cracking & Peeling;" is "Durable, Mildew Resistant Finish"; is suitable for "Waterproofing, Solid Color Coating;"  "Revives Wood & Composite Decks, Railings, Porches & Boat Docks;" is "Great for Concrete Pool Decks, Patios & Sidewalks," and has a life expectancy of 5 to 25 years. These representations constitute express warranties and became part of the basis of the bargain between Plaintiff and the Class members, on the one hand, and Defendants, on the other.

86.    Defendants made the above-described representations to induce Plaintiff and the Class members to purchase DeckOver, and Plaintiff and the Class members relied on the representations in purchasing DeckOver.

87.    Plaintiff and members of the Class may be presumed to have relied upon the above-described representations.

88.    Defendants breached their express warranties about DeckOver because, as alleged above, DeckOver is prone to promptly peeling, chipping, bubbling, and degrading within months of application.

89.    The Defendants knew that its DeckOver product was defective, yet continued to represent that they were free of defects. Plaintiffs and members of the Classes had no ability to detect the defect nor received notice thereof, and did not receive notice on a timely basis. Based on facts within its control, Defendants knew or should have known of the defective nature of the DeckOver product long before Plaintiff's DeckOver product failed to perform as promised and warranted.

90.    Within a reasonable time after they knew or should have known of such breach, Plaintiff, on behalf of themselves and the other members of the Class, placed Defendants on notice thereof.

91.    Plaintiff and members of the Class have given Defendants' a reasonable time to cure the failures with respect to their warranties, and Defendants have failed and refused to do so. In the alternative, Defendants' conduct, as alleged herein, has negated any need to Plaintiff and members of the Class to provide Defendants with an opportunity to cure.

92.    Defendants have failed to provide Plaintiff and members of the Class with a product that conforms to the qualities and characteristics that Defendants expressly warranted when they sold the DeckOver to Plaintiff and members of the Class.

93.    As a direct and proximate result of Defendants' breach of warranty, Plaintiff and Class members sustained damages and other losses in an amount to be determined at trial, plus attorneys' fees, costs and interest thereon.

**COUNT IV**

**Violations of the Magnuson-Moss Federal Warranty Act (MMWA)**

**15 U.S.C. 2301, et seq.**

**(On Behalf of the New Jersey Class Against the Behr and Home Depot Defendants)**

94.    Plaintiff hereby re-alleges and incorporates by reference each and every allegation contained in all preceding paragraphs of this Complaint as if fully set forth herein.

95.    The DeckOver is a "consumer products" as defined in 15 U.S.C. §2301.

96.    Plaintiff and the other Class members are "consumers," as defined in 15 U.S.C. §2301.

97.    The Defendants are "suppliers" of the DeckOver as defined in 15 U.S.C. §2301.

98.    The Defendants are "warrantors" as defined in 15 U.S.C. §2301.

99.    The Defendants supplied a "written warranty" regarding the DeckOver, as defined in 15 U.S.C. §2301(6).

100.    The above-referenced warranties made by Defendants pertained to consumer products costing the consumer more than twenty-five dollars, see 15 U.S.C. §2302(d)(3)(a). In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

101.    The Defendants have been afforded reasonable opportunity to cure their breaches of warranty. Pursuant to the provisions of 15 U.S.C. §2310(e), Plaintiff on behalf of himself and Class members sent notice to Defendants' principal places of business to provide them with reasonable opportunity to correct their business practices and cure their breaches of warranties under the MMWA. Defendants have not cured their breaches of warranties.

102.    In addition, resorting to any informal dispute settlement procedure or affording Defendants another opportunity to cure their breaches of warranty is unnecessary and futile. Any remedies available through any informal dispute settlement procedures would be inadequate under the circumstances, as Defendants continue to fail to disclose DeckOver's defects or to provide repairs at no cost. Any requirement under the MMWA or otherwise that Plaintiff resort to any informal dispute settlement procedure or afford Defendants a reasonable opportunity to cure the breach of warranties described above is excused or, alternatively, has been satisfied.

103.    Defendants violated the Magnuson-Moss Federal Warranty Act by their failure to comply with the express and implied warranties they made to Plaintiff and other Class members. See, 15 U.S.C. §2301, et seq.

104.    Defendants falsely represented that DeckOver was "[l]ong-lasting, durable finish," "conceals cracks and splinters up to ¼"" and creates a smooth, slip-resistant finish that also resists cracking and peeling" with "excellent adhesion." Defendants also falsely advertised that DeckOver "Resists Cracking & Peeling;" is "Durable, Mildew Resistant Finish"; is suitable for "Waterproofing, Solid Color Coating;" "Revives Wood & Composite Decks, Railings, Porches & Boat Docks;" is "Great for Concrete Pool Decks, Patios & Sidewalks," and has a life expectancy of 5 to 25 years. These representations constitute express warranties and became part of the basis of the bargain between Plaintiff and the Class members, on the one hand, and Defendants, on the other.

105.    There also exists an implied warranty for the sale of DeckOver within the meaning of the MMWA. Defendants breached this implied warranty because DeckOver was not fit for its intended use.

106.     Defendants' breach of warranties has deprived Plaintiff and Class members of the benefits of their bargains.

107.     As a direct and proximate result of Defendants' breach of warranty, Plaintiff and Class members sustained damages and other losses in an amount to be determined at trial, plus attorneys' fees, costs and interest thereon.

**COUNT V**

**Breach of Implied Warranty**

**(On Behalf of the New Jersey Class Against the Behr and Home Depot Defendants)**

108.     Plaintiff hereby re-alleges and incorporates by reference each and every allegation contained in all preceding paragraphs of this Complaint as if fully set forth herein.

109.     The Defendants are in the business of supplying, marketing, advertising, warranting, and selling DeckOver. Defendants impliedly warranted to Plaintiff and Class members that DeckOver was of a certain quality, was fit for the ordinary purpose for which DeckOver would be used, and conformed to the promises or affirmations of fact made in its promotional materials, the container and/or label.

110.     The Defendants are in privity with Plaintiff and Class members by law and fact. Plaintiff and Class members had sufficient dealing with Defendants and their representatives and agents to establish privity of contract, purchased the DeckOver Defendants, and Defendants advertisements of the DeckOver were aimed at Plaintiff and lass members. Defendants are estopped from limiting claims by Class members for common law and statutory violations based on a defense of lack of privity.

111.     DeckOver would not pass without objection in the market for resurfacers because it is prone to premature peeling, cracking, and bubbling, which also makes it unfit for the ordinary purpose for which DeckOver would be used.

112.     DeckOver is not adequately labeled because its labeling fails to disclose its propensity to premature peeling, cracking, bubbling, and degradation, and does not advise

members of the proposed Class of the existence of the issue prior to experiencing failure firsthand.

113.   Defendants' conduct described in this complaint constitutes a breach of implied warranty under U.C.C. § 2-314.

114.   Defendants' actions have deprived Plaintiff and the members of the proposed Class of the benefit of their bargains and have caused DeckOver to be worth less than what Plaintiff and other members of the proposed Class paid.

115.   As a direct and proximate result of Defendants' breach of implied warranty, members of the proposed Class received goods whose condition substantially impairs their value. Plaintiff and members of the proposed Class have been damaged by the diminished value of their DeckOver.

116.   As a direct and proximate result of Defendants' breach of warranty, Plaintiff and Class members sustained damages and other losses in an amount to be determined at trial, plus attorneys' fees, costs and interest thereon.

**COUNT VI**

**Fraud**

**(On Behalf of the New Jersey Classes Against the Behr and Home Depot Defendants)**

117.   Plaintiff incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated herein.

118.   As described herein, Defendants knowingly made material misrepresentations and omissions regarding the product in their marketing and advertising materials.

119.   Defendants made these material misrepresentations and omissions in order to induce Plaintiff and putative Class members to purchase the product.

120.   Rather than inform consumers about the drawbacks associated with using the DeckOver Defendants made false and misleading statements, and material omissions, to promote

the sale of the DeckOver, as described above, and including, but not limited to, representing that the Product was a "[l]ong-lasting, durable finish" that "conceals cracks and splinters up to ¼"" and creates a smooth, slip-resistant finish that also resists cracking and peeling" with "excellent adhesion." It also describes DeckOver as "5x thicker than standard paints and stains." as more fully set forth above, when, in fact, Defendants knew or should have known the product does not have these qualities or effects; rather, it does not remotely perform as represented.

121.    The misrepresentations and omissions made by Defendants, upon which Plaintiff and other Class members reasonably and justifiably relied, were intended to induce and did actually induce Plaintiff and other Class members to purchase the DeckOver.

122.    Had Plaintiff known the truth about the qualities of and dangers associated with the product, they would not have purchased the DeckOver, or would have paid substantially less for it.

123.    Defendants' fraudulent actions and omissions caused damage to Plaintiff and other Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VII

### Negligence – Failure to Warn

### (On Behalf of the New Jersey Class Against the Behr and Home Depot Defendants)

### N.J.S.A. 2A:58C-2, et seq.

124.    Plaintiff incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated herein.

125.    At all times referenced herein, Defendants were responsible for designing, formulating, testing, manufacturing, inspecting, distributing, marketing, supplying and/or selling DeckOver to Plaintiff and the Class.

126.    At all times material hereto, the use of DeckOver in a manner that was intended and/or reasonably foreseeable by Defendants involved substantial risk of product failure and other damages alleged herein.

127.    At all times the risk of failure and other damages was known or knowable by Defendants, in light of the generally recognized and prevailing knowledge available at the time of manufacture, design, marketing and sale of the DeckOver product as described herein.

128.    Defendants, as the manufacturers, distributors and/or sellers of DeckOver, had a duty to warn Plaintiff and the Class of all dangers associated with the intended use.

129.    Defendants were negligent and breached their duty of care by negligently failing to give adequate warnings to purchasers and users of DeckOver, including Plaintiff, about the risks, potential dangers and defective condition of the product.

130.    Defendants knew, or by the exercise of reasonable care, should have known of the inherent design defects and resulting dangers associated with using DeckOver as described herein, and knew that Plaintiff and Class members could not reasonably be aware of those risks. Defendants failed to exercise reasonable care in providing the Class with adequate warnings.

131.    As a direct and proximate result of Defendants' failure to adequately warn consumers about the risks and dangers of using DeckOver, Plaintiff and the Class have suffered damages as set forth herein and to be proven at trial.

## COUNT VIII

**Negligence – Failure to Test**

**(On Behalf of the New Jersey Class Against the Behr Defendants)**

**N.J.S.A. 2A:58C-2, et seq.**

132.     Plaintiff incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated herein.

133.     Defendants did not perform adequate testing on DeckOver, which was defectively designed, formulated, tested, manufactured, inspected, distributed, marketed, supplied and/or sold to Plaintiff and the Class.

134.     Adequate testing would have revealed the serious deficiencies in the DeckOver in that it would have revealed the likelihood of failure and damage to structures occasioned by use of the products.

135.     Defendants had, and continue to have, a duty to exercise reasonable care to properly design—including the duty to test—the DeckOver that they introduced into the stream of commerce.

136.     Defendants breached these duties by failing to exercise ordinary care in the design and testing of DeckOver, which they introduced into the stream of commerce, because Defendants knew or should have known that the DeckOver causes chipping, peeling, and subsequent rotting and damage to structures that it is applied to, in a relatively short period of time after its application.

137.     Defendants knew or reasonably should have known that Class members such as Plaintiff would foreseeably suffer economic damages or injury and/or be at an increased risk of

suffering damage and injury, as a result of their failure to exercise ordinary care in the design of DeckOver by failing to conduct appropriate testing.

138.    By reason of the foregoing, Plaintiff and the Class experienced and/or are at risk of experiencing financial damage and injury.

139.    As a direct and proximate result of Defendants' failure to adequately test DeckOver before it sold it to Plaintiff and Class members, Plaintiff and the Class have suffered damages and other losses which will be proven at trial.

## COUNT X

### New Jersey Products Liability Act

### (On Behalf of the New Jersey Class Against the Behr Defendants)

### N.J. Stat. Ann. § 2A:58C-2, et seq.

140.    Plaintiff incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated herein.

141.    Behr Defendants designed its DeckOver product to be used or applied on Plaintiff's and the Class members' decks and other structures.

142.    The DeckOver product is defective in design in that it is not reasonably fit or suitable for its intended purpose and/or their foreseeable risks exceed the benefits associated with its design.

143.    Feasible design alternatives existed to make the DeckOver product fit and suitable for its intended use as a resurfacer at the time of their design.

144.    The DeckOver product was defectively and improperly manufactured rendering the products deficient and unreasonably dangerous and hazardous to Plaintiff and Class members.

145.    The defective condition of DeckOver product rendered it unreasonably dangerous, and product as in this defective condition when they left the hands of the Defendants and was placed.

146.    The DeckOver product was expected to and did reach consumers, including, Plaintiff and Class members, without substantial change in the conditions in which they were designed, manufactured, labeled, sold, distributed, marketed and otherwise released into the stream of commerce.

147.    Plaintiffs and Class members were unaware of the hazards and defects associated with the DeckOver product and used the product in a manner that was intended by Defendants.

148.    Defendants are strictly liable to Plaintiffs and Class members for designing, manufacturing and placing into the stream of commerce products that were unreasonably dangerous for their reasonably foreseeable uses at the time they left the control of Defendants because of both design and manufacturing defects.

149.    Defendants knew or should have known of the dangers associated with the use of the DeckOver product and the defective nature of those products but continued to design, manufacture and sell them in disregard of the known risk of harm, and the safety risk to humans.

150.    As a direct and proximate cause of the design and manufacturing defects and Defendants' misconduct, Plaintiffs and Class members have incurred and will incur damages in an amount to be proven at trial.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter a judgment awarding the following relief:

a.    An order certifying the proposed Class and appointing Plaintiff counsel to represent the Classes;

b.    For an order requiring Defendants to provide an accounting of all moneys which it may have received as a result of the acts and practices found to constitute consumer fraud under N.J.S.A. § 56:8-1, *et seq*;

c.     An order enjoining Defendants from their unlawful conduct;

d.     An order awarding Plaintiff and the Classes pre-judgment and post-

judgment interest as allowed under the law;

e.     An order awarding Plaintiff and the Classes reasonable attorneys' fees

and costs of suit, including expert witness fees; and

f.     An order awarding such other and further relief as this Court may

deem just and proper.

## JURY DEMAND

Plaintiff's hereby demands a trial by jury on all issues so properly triable thereby.


Dated: December 1, 2017                  Respectfully Submitted,

                                         By: s/ Michael Weinkowitz

                                         Michael Weinkowitz
                                         Charles E. Schaffer
                                         LEVIN, SEDRAN & BERMAN
                                         510 Walnut Street, Suite 500
                                         Philadelphia, Pennsylvania 19106-3697
                                         Telephone: (877) 882-1011
                                         Facsimile: (215) 592-4663
                                         mweinkowitz@lfsblaw.com
                                         cschaffer@lfsblaw.com

                                         Michael McShane (SBN 127944)
                                         S. Clinton Woods (SBN 246054)
                                         Ling Y. Kuang (SBN 296873)
                                         AUDET & PARTNERS, LLP
                                         711 Van Ness Avenue. Suite 500
                                         San Francisco, CA 94102
                                         Telephone: (415) 568-2555
                                         Facsimile: (415) 568-2556
                                         mmcshane@audetlaw.com
                                         cwoods@audetlaw.com
                                         lkuang@audetlaw.com

Charles LaDuca
CUNEO GILBERT & LADUCA LLP
4725 Wisconsin Avenue, NW
Suite 200
Washington, DC 20016
Telephone: (202)789-3960
Facsimile: (202) 789-1813
charles@cuneolaw.com

Melissa S. Weiner
HALUNEN LAW
80 South 8th Street
IDS Center
Suite 1650
Minneapolis, MN 55402
Telephone: (612) 548-5286
Facsimile: (612) 605-4099
weiner@halunenlaw.com

*Attorneys for Plaintiff BARRY BROCK*